UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| EDWARD ALLEN CLACK, III,<br>    *Plaintiff,*<br>    *v.*<br>MICHAEL TORRE, MARK O'CONNOR; SANDRA BROOKS; FRANCES D'ORAZIO; THE GUILFORD POLICE DEPARTMENT; THE NEW HAVEN COUNTY SUPERIOR COURT; WHALLEY JAIL; NEW HAVEN COUNTY; STATE OF CONNECTICUT<br>    *Defendants.* | Civil No. 3:10cv1905 (JBA)<br><br>September 9, 2013 |

**RULING ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

On December 3, 2010, Plaintiff Edward Allen Clack, III, proceeding pro se, brought this action against Defendants Michael Torre, Mark O'Connor, Sandra Brooks, Frances D'Orazio, the Guilford Police Department, the New Haven County Superior Court, Whalley Jail, New Haven County, and the State of Connecticut.[1] Plaintiff alleges various violations of his constitutional rights, in addition to bringing multiple state-law claims. On January 4, 2012, Defendant Torre moved [Doc. # 75] to dismiss all of the claims against him. After the Court's ruling [Doc. # 80] on that motion only Plaintiff's claims for false arrest and malicious prosecution against Defendant Torre in his individual capacity remain pending. Defendant Torre now moves [Doc. # 83] for summary judgment as to these remaining claims. Defendants O'Connor, Brooks, and the

---

[1] As the Court noted in its ruling on Defendant Torre's motion to dismiss (*see* Rul. on Mot. Dismiss [Doc. # 80] at 1 n.1), a review of the docket entries in this matter reveals that Frances D'Orazio, the New Haven County Superior Court, Whalley Jail, New Haven County and the State of Connecticut were never served, and no request for additional time beyond the requirements of Fed. R. Civ. P. 4(m) has been made. (*See* D'Orazio USM-285 Process Receipt and Return [Doc. # 17]; State of Connecticut USM-285 Process Receipt and Return [Doc. # 17]; New Haven County Superior Court USM-285 Process Receipt and Return [Doc. # 17]).

Guilford Police Department (the "Guilford Defendants") also move [Doc. # 84] for summary judgment on all of Plaintiff's claims against them. For the reasons that follow, Defendant Torre's motion for summary judgment is granted, and the Guilford Defendants' motion for summary judgment is denied without prejudice to renew.

I.  Background

Plaintiff worked as a sub-contractor for Comcast installing cable service for approximately two years without incident prior to July 2009. (*See* Pl.'s Stmt., Ex. 2 to Pl.'s Loc. R. 56(a)2 Stmt. [Doc. # 92] at 2.) On July 1, 2009, Plaintiff was assigned to a job in Guilford, Connecticut, at the residence of Defendant Torre, who is a detective in the New Haven Police Department, his wife, and his mother-in-law, Frances D'Orazio. (*Id.*) Plaintiff parked his truck in the parking lot of a soccer field near the home and Mrs. D'Orazio let him inside. (*See id.*; D'Orazio Stmt, Ex. C to the Guilford Defs.' Loc. R. 56(a)1 Stmt. [Doc. # 84-2].) Mrs. D'Orazio showed Plaintiff the room where the new cable line was to be installed, and then Plaintiff asked her to show him the basement so he could locate the main cable feed. (*See* Pl.'s Stmt. at 2; D'Orazio Stmt.) Mrs. D'Orazio accompanied Plaintiff to the basement while he looked for the main cable feed. (*See* Pl.'s Stmt. at 2; D'Orazio Stmt.) Once Plaintiff determined what would need to be done to complete the installation, he returned to his truck to get his tools. (*See* Pl.'s Stmt. at 2.)

Upon returning to the residence, Mrs. D'Orazio again accompanied Plaintiff to the room where the new cable line would be installed so that he could locate the best spot to drill. (*See id.*) Plaintiff asked Mrs. D'Orazio to tap on the floor in that spot so he could locate it when drilling up from the basement. (*See id.*; D'Orazio Stmt.) Plaintiff then went into the basement and drilled the hole to run the cable line upstairs. (*See* Pl.'s Stmt. at 2; D'Orazio Stmt.) Plaintiff was alone in the basement for several minutes. (*See* Pl.'s

2

Stmt. at 2; D'Orazio Stmt.)[2] Plaintiff completed the installation and at Mrs. D'Orazio's request, confirmed that the internet service was still working, after which she signed off on his work and he left. (*See* Pl.'s Stmt. at 3; Pl.'s Dep. Tr., Ex. A to Defendant Torre's Loc. R. 56(a)1 Stmt. [Doc. # 83-5] at 22–23.)

On July 3, 2009 at about 9:30 a.m., Defendant O'Connor, a Detective for the Guilford Police Department, received a call from Defendant Torre reporting that his off-duty Glock 26 9mm pistol had gone missing from his residence. (*See* Arrest Warrant Appl., Ex. A1 to the Guilford Def.'s 56(a)1 Stmt. at 1; *see also* Torre Aff., Ex. B to Defendant Torre's 56(a)1 Stmt. ¶ 7.) Defendant Torre told Defendant O'Connor over the phone that he had gone into his basement between 7:30 a.m. and 8:00 a.m. that morning to retrieve his pistol from the gun case where he stored it, and found that the pistol, the holster, and the spare magazine were missing. (*See* Arrest Warrant Appl.; *see also* Torre Stmt., Ex. B to the Guilford Def.'s 56(a)1 Stmt.; Torre Aff. ¶¶ 4–5.) Defendant Torre also stated that he thought he may have left the pistol at work, but his gun was not in his locker when he went there to check. (*See* Arrest Warrant Appl. at 1; *see also* Torre Stmt; Torre Aff. ¶ 6.)

Upon receiving the call, Defendant O'Connor visited Defendant Torre's home and interviewed him, his wife Sylvia, and his mother-in-law, Mrs. D'Orazio. (*See* Arrest Warrant Appl. at 1; *see also* Torre Aff. ¶ 8.) Defendant Torre told Defendant O'Connor that he had stored his pistol in the gun case in his basement on the evening of June 30, 2009, that he had worn his duty weapon to work on July 1, 2009, that he had stayed home

---

[2] The parties disagree as to how long Plaintiff was in the basement by himself. Mrs. D'Orazio wrote in her statement to the Guilford Police Department that Plaintiff was alone for "a period of 20 min[utes] total" (D'Orazio Stmt.), while Plaintiff claims he was alone for no more than a couple of minutes (Pl.'s Dep. Tr., Ex. A to Defendant Torre's Loc. R. 56(a)1 Stmt. [Doc. # 83-5] at 23).

on July 2, 2009, and that he discovered the pistol was missing on July 3, 2009. (*See* Arrest Warrant Appl. at 1; *see also* Torre Aff. ¶¶ 9–12.) Defendant Torre also stated that there was no sign of a break-in or forced entry, and that the house had always been locked during the time period in question. (*See* Arrest Warrant Appl. at 1; *see also* Torre Aff. ¶ 13.) Mrs. D'Orazio told Defendant O'Connor that only her cleaning lady and a Comcast technician had been in the house between June 30 and July 3, 2009, and that her cleaning lady did not go into the basement and was never alone in the house. (*See* Arrest Warrant Appl. at 2; *see also* D'Orazio Stmt. at 2.) Mrs. D'Orazio also stated that the Comcast technician was the only person other than the residents of the home who had been alone in the basement, and stated that he had worked in the area where the gun case was located. (*See* Arrest Warrant Appl. at 2.)[3] Defendant Torre stated that neither his wife nor his mother-in-law knew he stored the pistol in the basement. (*See id.* at 3.)

After interviewing Defendant Torre and his family, Defendant O'Connor took pictures of the area where the gun case was located, and processed the gun case for fingerprints and DNA, which were sent to the state crime lab for analysis. (*See id.*) Defendant O'Connor contacted Comcast Security and spoke with Plaintiff's supervisor, who identified Plaintiff as the technician who had completed the cable installation at Defendant Torre's home. (*See id.* at 2.) Defendant O'Connor checked Plaintiff's criminal record and determined that he was a convicted felon whose arrest history included charges for theft, terroristic threatening, resisting arrest, and assaulting a police officer.

---

[3] The parties dispute how close Plaintiff actually was to the gun case when he installed the new cable line in the basement. Mrs. D'Orazio claims that Plaintiff worked on the wire that ran across the shelf on which the gun case was located and that Plaintiff worked within one to two feet of the gun case. (*See* Arrest Warrant Application at 2.) Plaintiff claims that the wire near the gun case was actually an old wire, and that he was never closer than five to ten feet from the gun case when he was in the basement alone. (*See* Pl.'s Dep. Tr. at 71–72.)

4

(*See id.*)  Defendant O'Connor also confirmed that Plaintiff did not have a gun license. (*See id.* at 3.)

On July 8, 2009, after returning home from work as usual, Plaintiff answered a knock at his door and found Defendant O'Connor and his partner standing outside. (*See* Pl.'s Stmt. at 5.)  Plaintiff let the detectives into his home and they discussed the investigation into the missing pistol. (*See id.*; *see also* Arrest Warrant Appl. at 3.) Plaintiff confirmed that he had performed the installation at Defendant Torre's home, and that he had worked in the basement. (*See* Pl.'s Stmt. at 5; Arrest Warrant Appl. at 3.) However, Plaintiff stated that he had not seen any gun box, and when Defendant O'Connor showed him a picture of the gun case, he said he had not touched or opened the case and his fingerprints should not be on it. (*See* Pl.'s Stmt. at 5; Arrest Warrant Appl. at 3.)[4] Plaintiff told the detectives that he had "a small daughter and [he] ha[d] no interest in obtaining a gun." (*See* Pl.'s Stmt. at 5; *see also* Arrest Warrant Appl. at 3.) Plaintiff also admitted that he was a convicted felon and had served time in jail in Georgia, but did not know if his DNA was on file there. (*See* Arrest Warrant Appl. at 3.)[5]

---

[4] Defendant O'Connor also showed Plaintiff a picture of the cable that ran across the shelf where the gun case was located. (*See* Pl.'s Stmt. at 5; Arrest Warrant Appl. at 3.) Plaintiff claims he told Defendant O'Connor "repeatedly that [he] didn't remember working in that area and that [his] prints shouldn't be in that area." (*See* Pl.'s Stmt. at 5.) However, Defendant O'Connor wrote in the application for the arrest warrant that Plaintiff said "his fingerprints should not be on that box though he had been working in the area." (*See* Arrest Warrant Appl. at 3.) Plaintiff claims that he did not work in the immediate vicinity of the gun case, but rather worked between five and ten feet away from the shelving unit on which it was stored. (*See* Pl.'s Dep. Tr. at 71–72.) However, when Plaintiff was asked about the paragraph of the arrest warrant application in which this statement was located, he confirmed that there was nothing false in that paragraph. (*See* Pl.'s Dep. Tr. at 68.)

[5] Plaintiff claims that Defendant O'Connor was not aware of his criminal history prior to this interview, but admitted that Defendant O'Connor may have confirmed his criminal status after the interview. (*See* Pl.'s Stmt. at 5; Pl.'s Dep. Tr. at 55–56, 61–62.)

5

Plaintiff refused to provide a DNA sample or to sign a written statement describing the interview, but did offer to submit to a lie detector test. (*See id.*; Pl.'s Dep. Tr. at 69–70.)

On July 17, 2009, Defendant O'Connor prepared an application for a warrant to arrest Plaintiff in relation to the alleged theft of Defendant Torre's pistol, and on July 22, 2009, Connecticut Superior Court Judge Vitale signed the warrant. (*See* Arrest Warrant Appl. at 4.) The next day around 8:30 a.m., Plaintiff was in his work truck on the way to his first job of the day when Defendant O'Connor and his partner pulled up in a green sports car. (*See* Pl.'s Stmt. at 7.) Defendant O'Connor asked Plaintiff to step out of his vehicle, and placed Plaintiff under arrest. (*See id.*)[6] Plaintiff was careful to comply with all of Defendant O'Connor's requests and cooperated fully during his arrest. (*See id.*) After his arrest and processing, Defendant Brooks interviewed Plaintiff. (*See id.*) In order to convince Plaintiff to speak with her, she informed him that he had a very high bond of $150,000 and indicated that she would advocate for a reduced bond in order to assist him in being released. (*See id.*) Plaintiff maintained his innocence throughout the interrogation despite Defendant Brooks's repeated attempts to get him to confess to the alleged theft. (*See id.* at 8–9.)

On July 24, 2009, Plaintiff was arraigned on the charges and his bond was set at $150,000. (*See id.* at 10.) Plaintiff was detained in the Whalley Jail, where he was denied visitation and telephone privileges, and had difficulty accessing legal and religious

---

The arrest warrant application does not indicate whether Defendant O'Connor checked Plaintiff's criminal record before or after interviewing Plaintiff. (*See* Arrest Warrant Application at 2.)

[6] Plaintiff claims that the detectives had both an arrest warrant and a search warrant on July 23, 2009, and raises claims in his Complaint pertaining to the search and seizure of some of his electronic equipment. (*See* Pl.'s Stmt. at 7; Oct. 12, 2011 Compl. [Doc. # 69] at 4–5.) However, Defendants have not included a search warrant for Plaintiff's vehicle or home in their summary judgment record.

materials. (*See id.* at 10–12.) On July 28, 2009, Defendant O'Connor obtained a warrant to take a DNA sample from Plaintiff (*see* Search Warrant Appl., Ex. A2 to the Guilford Def.'s' 56(a)1 Stmt.), and on July 30, 2009, a DNA swab was taken from Plaintiff while he was detained (*see* Pl.'s Stmt. at 11). On August 4, 2009, Plaintiff was brought back to court, where his attorney moved to reduce his bond. (*See* Aug. 4, 2009 Tr., Ex. to Dec. 30, 2010 Compl. [Doc. # 1] at 1–2.) While Plaintiff's bond was not reduced, the judge admonished the State to process the fingerprint evidence as soon as possible. (*See id.* at 3.)

Plaintiff was in court again on August 6, 2009, when the State indicated that the state crime laboratory had inadvertently compared the print on the gun case to Defendant Torre's fingerprints rather than to Plaintiff's. (*See* Aug. 6, 2009 Tr., Ex. to Dec. 30, 2010 Compl. at 1–2.) The judge again admonished the State to process Plaintiff's fingerprint evidence as quickly as possible, indicating that the case would be very weak without fingerprint evidence, and that if the evidence was not processed quickly, he would feel compelled to lower Plaintiff's bond as he had doubts about the State's ability to prove its case beyond a reasonable doubt without this evidence. (*See id.* at 3; *see also* Nov. 12, 2009 Tr., Ex. to Dec. 30, 2010 Compl. at 1.) On August 13, 2013, when the fingerprint analysis determined that he had not touched the gun case, Plaintiff was released on bail pending the results of the DNA tests. (*See* Pl.'s Stmt. at 12–13.) After some delay in processing the DNA evidence, on November 19, 2009, the State represented that the results of the DNA test excluded Plaintiff, and nolled the charges. (*See* Nov. 19, 2009 Tr., Ex. to Dec. 30, 2010 Compl. at 1.) Plaintiff's attorney moved for a dismissal on the merits, which the court promptly granted. (*See id.* at 1–2.) The record is devoid of any other evidence that could tie Plaintiff to the alleged theft of the pistol.

II. **Discussion**[7]

A. **Defendant Torre's Motion for Summary Judgment**

Plaintiff's only remaining causes of action against Defendant Torre are claims for false arrest and malicious prosecution arising from Defendant Torre's statement to the Guilford Police regarding the alleged theft of his pistol. (*See* Rul. on Mot. to Dismiss [Doc. # 80] at 11.)[8] In its ruling on Defendant Torre's motion to dismiss, the Court relied

---

[7] Summary judgment is appropriate where, "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in favor of the party against whom summary judgment is sought," *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (internal quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When considering a motion for summary judgment, the Court may consider depositions, documents, affidavits, interrogatory answers, and other exhibits in the record. Fed. R. Civ. P. 56(c).

[8] In his Complaint, Plaintiff does not specify whether he brings these claims against Defendant Torre pursuant to 42 U.S.C. § 1983 or as state law tort claims. A defendant must be acting under color of state law in order to be liable under § 1983. *See West v. Atkins*, 487 U.S. 42, 48 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and the laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."). Although the record indicates that Defendant Torre was acting as a private citizen reporting the theft of his personal property when he made the statements at issue in this case, the gravamen of Plaintiff's claims is that Defendant Torre somehow abused his position as a police officer by identifying himself as a New Haven Detective in reporting the alleged crime. However, because the Court must look to state law in deciding a § 1983 claim for false arrest or malicious prosecution, *see Russo v. City of Bridgeport*, 479 F.3d 196, 203 (2d Cir. 2007) ("In analyzing claims alleging the constitutional tort of false arrest, we have generally looked to the law of the state in which the arrest occurred." (internal citations and quotation marks omitted)); *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) ("Claims for false arrest or malicious prosecution,

8

on *Pauls v. Donovan*, No. 3:04-cv-1525 (RNC), 2008 WL 207697 (D. Conn. Jan. 22, 2008), and *Shattuck v. Town of Stratford*, 233 F. Supp. 2d 301 (D. Conn. 2002) for the proposition that "[i]n Connecticut, persons reporting criminal activity may be liable for false arrest if they 'instigate' an arrest for which there is no probable cause," *Pauls*, 2008 WL 207697, at *4. However, *Pauls* relied only on *Shattuck* for that same proposition, and *Shattuck* cited New York, rather than Connecticut law when announcing that principle. *See Shattuck*, 233 F. Supp. 2d at 314. Under Connecticut law "a cause of action for false imprisonment cannot be sustained where the plaintiff's arrest results from the defendants' institution of and compliance with proper legal authority." *LoSacco v. Young*, 20 Conn. App. 6, 21 (1989). In *LoSacco* for example, the court determined that the plaintiff's cause of action sounded in malicious prosecution, rather than false arrest, where the plaintiff claimed he was arrested as a result of the defendants' statements to the police and their filing of a complaint. *Id.* Similarly, Plaintiff's claims against Defendant Torre can only sound in malicious prosecution, because Plaintiff's allegations against Defendant Torre relate only to Defendant Torre's statements to Defendant O'Connor in reporting the alleged theft of his pistol. Thus, only Plaintiff's malicious prosecution claim against Defendant Torre remains outstanding.

The Connecticut Supreme Court has stated the elements of a malicious prosecution claim as follows:

---

brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for false arrest or malicious prosecution under state law."); *see also Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002) ("In order to prevail on a § 1983 claim against a state actor of malicious prosecution, a plaintiff must . . . establish the elements of a malicious prosecution claim under state law."), the Court concludes that Plaintiff's false arrest and malicious prosecution claims against Defendant Torre would fail under both § 1983 and state law.

> [a]n action for malicious prosecution against a private person requires a plaintiff to prove that: (1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice.

*Bhatia v. Debek*, 287 Conn. 397, 404 (2008) (quoting *McHale v. W.B.S. Corp.*, 187 Conn. 444, 447 (1982)). Defendant Torre argues that he did not initiate the criminal proceedings against Plaintiff, and that he acted with probable cause and without malice.[9] "A private person can be said to have initiated a criminal proceeding if he has insisted that the plaintiff should be prosecuted, that is, if he has brought pressure of any kind to bear upon the public officer's decision to commence the prosecution." *Bhatia*, 287 Conn. at 407 (quoting *McHale*, 187 Conn. at 448). "But a private person has not initiated a criminal proceeding if he has undertaken no more than to provide potentially incriminating information to a public officer." *Bhatia*, 287 Conn. at 407 (quoting *McHale*, 187 Conn. at 448). However, "a private citizen who knowingly provides false information to a public officer is not entitled to the limited immunity provided under the initiation element, even if that person brought no pressure to bear on the public officer and left the decision to prosecute entirely in the hands of that public officer." *Bhatia*, 287 Conn. at 407. The Connecticut Supreme Court has stated that this limited immunity is consistent with the public policy of encouraging private citizens to assist in law enforcement. *Id.* at 408.

Defendant Torre avers that he did not provide any additional information to the Guilford Police Department beyond his statements in the police report, that he never

---

[9] Because the Court concludes that Defendant Torre did not initiate Plaintiff's arrest and prosecution, it need not determine whether Defendant Torre had probable cause or acted with malice.

discussed with anyone at the Guilford Police Department whether Plaintiff should be arrested, and that he never pressured either the Guilford Police Department or the State's Attorneys Office to arrest or prosecute Plaintiff. (*See* Torre Aff. ¶¶ 19–21, 23.) Although Plaintiff generally claims that Defendant Torre's position as a police officer caused Defendant O'Connor to believe his statements over those of Plaintiff, Plaintiff has not offered any evidence to dispute the claims in Defendant Torre's affidavit. Thus there is no evidence to show that Defendant Torre "initiated" Plaintiff's arrest and prosecution by putting pressure to bear on law enforcement officials.

Rather, Plaintiff argues that the information Defendant Torre provided to Defendant O'Connor regarding the disappearance of the pistol was knowingly false. However, Plaintiff admitted in his deposition that he lacked evidence to show that several of Defendant Torre's statements were false. Plaintiff stated that he did not have any evidence to contradict Defendant Torre's statement that he worked an outside duty job on July 1, 2009, that he stayed home on July 2, 2009, or that he discovered the pistol missing on July 3, 2009. (*See* Pl.'s Dep. Tr. at 16.) Plaintiff focuses on Defendant Torre's contention that he stored the pistol in his basement on June 30, 2009 as being false, but does no more than express his belief that this statement was untrue. Plaintiff offers no evidence to establish that this statement was knowingly false when Defendant Torre made it to Defendant O'Connor. Defendant Torre did not tell the Guilford Police Department that Plaintiff had stolen his pistol, and while Plaintiff maintains his innocence of the theft, Defendant Torre's statements to the police are not necessarily inconsistent with Plaintiff's innocence. In the absence of additional documents or information, Plaintiff has not put forth sufficient evidence to raise a question of material fact as to whether any of Defendant Torre's statements to the police were knowingly false. *See Western World Ins.*

11

*Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) ("The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." (internal citations and quotation marks omitted)). Thus, there is no evidence based on which a jury could conclude that Defendant Torre "initiated" Plaintiff's arrest or prosecution, and Defendant Torre's motion for summary judgment on the malicious prosecution claim is therefore granted.

**B.    The Guilford Defendants' Motion for Summary Judgment**

The Guilford Defendants argue that they are entitled to summary judgment on each of Plaintiff's claims. However, Plaintiff, acting pro se, has filed multiple amended complaints, which do not clearly delineate the causes of action alleged against each defendant, and the Court has not yet had the opportunity to construe the claims against the Guilford Defendants. In its ruling on Defendant Torre's motion to dismiss, the Court held that the December 23, 2011 Complaint [Doc. # 74], in addition to the October 12, 2011 Complaint [Doc. # 69], and the exhibits attached to the prior iterations of the complaint would operate as the operative pleadings in this matter. (*See* Rul. on Mot. to Dismiss at 6.) Only the October 12, 2011 Complaint mentions claims against the Guilford Defendants, and construing that pro se document liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the Court construes Plaintiff's Complaint to have alleged the following federal causes of action:

1. A claim for false arrest pursuant to 42 U.S.C. § 1983 against Defendants O'Connor and Brooks in their individual and official capacities, arising out of Plaintiff's arrest;

2. A claim for illegal search and seizure pursuant to 42 U.S.C. § 1983 against Defendants O'Connor and Brooks in their individual and official capacities, arising out of the search of Plaintiff's home and vehicle, the seizure of Plaintiff's GPS and hard drive, and the seizure of Plaintiff's DNA sample;

3. A Fourteenth Amendment equal protection claim against Defendants O'Connor and Brooks in their individual and official capacities, arising out of alleged selective enforcement and disparate treatment;

4. A Thirteenth Amendment peonage claim against Defendants O'Connor and Brooks in their individual and official capacities;

5. A claim for conspiracy to deprive Plaintiff of his civil rights pursuant to 42 U.S.C. § 1985 against Defendants O'Connor and Brooks in their individual and official capacities; and

6. A *Monell* claim for municipal liability against the Guilford Police Department.

The Court also believes that Plaintiff has alleged the following state law claims against Defendants O'Connor and Brooks: false imprisonment, malicious prosecution, assault, battery, defamation, evidence tampering, entrapment, intentional infliction of emotional distress, negligent infliction of emotional distress, coercion, harassment, and threatening.[10]

In their briefing on the pending motion for summary judgment, the Guilford Defendants failed to address a number of the claims enumerated above. For example, the Guilford Defendants have not addressed Plaintiff's conspiracy claims, or his Fourth Amendment claims related to the search of his apartment and vehicle, and the seizure of

---

[10] The Court expresses no opinion as to whether a private cause of action exists for each of Plaintiff's state law claims.

his GPS and hard drive, nor have they substantively addressed Plaintiff's state law claims. Therefore, in order to efficiently and completely adjudicate the Guilford Defendants' motion for summary judgment, the Guilford Defendants may renew their summary judgment motion, addressing prior omissions, and shall file such renewed motion no later than October 11, 2013. Plaintiff's opposition shall be filed by November 1, 2013, and any reply shall be filed by November 15, 2013.

## III.     Conclusion

For the foregoing reasons, Defendant Torre's Motion [Doc. # 83] for Summary Judgment is GRANTED. The Clerk is directed to dismiss Defendant Torre from this action. The Guilford Defendants' Motion [Doc. # 84] for Summary Judgment is DENIED without prejudice to renew as described above.

IT IS SO ORDERED.

    /s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 9th day of September, 2013.