UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| EDWARD ALLEN CLACK, III,<br>    *Plaintiff*,<br>        *v.*<br>MICHAEL TORRE, *et al.*,<br>    *Defendants*. | Civil No. 3:10cv1905 (JBA)<br><br>March 17, 2014 |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

On December 3, 2010, Plaintiff Edward Allen Clack, III, proceeding pro se, brought this action against Defendants Michael Torre, Mark O'Connor, Sandra Brooks, Frances D'Orazio, the Guilford Police Department, the New Haven County Superior Court, Whalley Jail, New Haven County and the State of Connecticut.[1]  Specifically, the Court has construed Plaintiff's multiple complaints to allege the following causes of action against Defendants O'Connor, Brooks, and the Guilford Police Department:   false arrest pursuant to 42 U.S.C. § 1983; unconstitutional search and seizure pursuant to 42 U.S.C. § 1983; selective enforcement and disparate treatment in violation of the Equal Protection Clause of the Fourteenth Amendment;  peonage in violation of the Thirteenth Amendment; civil rights conspiracy pursuant to 42 U.S.C. § 1985; a *Monell* claim; and state law claims for false imprisonment, malicious prosecution, assault and battery,

---

[1] As the Court has previously noted (*see* Rul. on Mot. Dismiss [Doc. # 80] at 1 n.1; Rul. on Defs.' Mot. Summ. J. [Doc. # 96] at 1 n.1), a review of the docket entries in this matter reveals that Frances D'Orazio, the New Haven County Superior Court, Whalley Jail, New Haven County, and the State of Connecticut were never served, and no request for additional time beyond the requirements of Fed. R. Civ. P. 4(m) has been made.  (*See* D'Orazio USM-285 Process Receipt and Return [Doc. # 17]; State of Connecticut USM-285 Process Receipt and Return [Doc. # 17]; New Haven County Superior Court USM-285 Process Receipt and Return [Doc. # 17].)  Furthermore, the Court granted summary judgment in favor of Defendant Torre on September 9, 2013.  (*See* Rul. on Defs.' Mot. Summ. J.).    Therefore, Defendants O'Connor, Brooks, and the Guilford Police Department are the only remaining Defendants in this case.

defamation, evidence tampering, entrapment, intentional infliction of emotional distress, negligent infliction of emotional distress, coercion, harassment, and threatening.  (*See* Rul. on Defs.' Mot. Summ. J. at 12–13.)[2]  Defendants O'Connor, Brooks, and the Guilford Police Department now move [Doc. # 100] for summary judgment on each of Plaintiff's remaining claims against them.[3]  In connection with this motion, Plaintiff moves [Doc. # 113] to strike several of the exhibits attached to Defendants' motion for summary judgment, and to disqualify defense counsel, and to add defense counsel and his law firm as defendants in this case.  For the following reasons, Plaintiff's motion to strike is denied, and Defendants' motion for summary judgment is granted.

---

[2] In his memorandum in opposition to the pending motion for summary judgment, Plaintiff raises many claims that were not asserted in his previous complaints, and addresses his claims against Defendants who were never properly served in this action.  Some of these claims are not cognizable in a § 1983 action.  For example, Plaintiff claims that his *Miranda* rights were violated.  However, as the Second Circuit has noted, "the failure to give *Miranda* warnings does not create liability under § 1983."  *Neighbour v. Covert*, 68 F.3d 1508, 1510 (2d Cir. 1995).  The Court has attempted to liberally construe Plaintiff's multiple complaints, and to that end, included a detailed list of what it considered to be the remaining claims in its ruling denying Defendants' first motion for summary judgemt.  (*See* Rul. on Defs.' Mot. Summ. J. at 12–13.)  However, Plaintiff cannot amend his pleadings to include additional claims and parties simply by mentioning these claims in his briefing.  *Olde Monmouth Stock Transfer Co., Inc. v. Depository Trust & Clearing Corp.*, 485 F. Supp. 2d 387, 393 (S.D.N.Y. 2007) ("It is long-standing precedent in this circuit that parties cannot amend their pleadings through issues raised solely in their briefs." (internal citations and quotation marks omitted)).  Thus, because these claims are not properly before the Court, they will not be addressed in the context of this ruling.

[3] These Defendants had previously moved [Doc. # 84] for summary judgment, but the Court denied the motion without prejudice to renew for failure to address each of Plaintiff's claims.  (*See* Rul. on Defs.' Mot. Summ. J. at 12–14.)

I.       **Background**[4]

Plaintiff worked as a sub-contractor for Comcast installing cable service for approximately two years without incident prior to July 2009.  (*See* Pl.'s Stmt., Ex. 2 to Pl.'s Loc. R. 56(a)2 Stmt. [Doc. # 92] at 2.)  On July 1, 2009, Plaintiff was assigned to a job in Guilford, Connecticut, at the residence of Mr. Torre, who is a detective in the New Haven Police Department, his wife, and his mother-in-law, Frances D'Orazio.  (*Id.*)  Plaintiff parked his truck in the parking lot of a soccer field near the home and Mrs. D'Orazio let him inside.  (*See id.*; D'Orazio Stmt, Ex. C to Defs.' Loc. R. 56(a)1 Stmt. [Doc. # 100-2].)  Mrs. D'Orazio showed Plaintiff the room where the new cable line was to be installed, and then Plaintiff asked her to show him the basement so he could locate the main cable feed.  (*See* Pl.'s Stmt. at 2; D'Orazio Stmt.)  Mrs. D'Orazio accompanied Plaintiff to the basement while he looked for the main cable feed.  (*See* Pl.'s Stmt. at 2; D'Orazio Stmt.)  Once Plaintiff determined what would need to be done to complete the installation, he returned to his truck to get his tools.  (*See* Pl.'s Stmt. at 2.)

Upon returning to the residence, Mrs. D'Orazio again accompanied Plaintiff to the room where the new cable line would be installed so that he could locate the best spot to drill.  (*See id.*)  Plaintiff asked Mrs. D'Orazio to tap on the floor in that spot so he could locate it when drilling up from the basement.  (*See id.*; D'Orazio Stmt.)  Plaintiff then went into the basement and drilled the hole to run the cable line upstairs.  (*See* Pl.'s Stmt. at 2; D'Orazio Stmt.)  Plaintiff was alone in the basement for several minutes.  (*See* Pl.'s

---

[4] This Court relied on the documents submitted in connection with all three of the summary judgment motions in this case when drafting the factual summary.  The Court has drawn on the summary of the facts in its previous summary judgment ruling, and has adapted that summary to address the additions to the record in connection with the pending motion.

Stmt. at 2; D'Orazio Stmt.)[5]  Plaintiff completed the installation and at Mrs. D'Orazio's request, confirmed that the internet service was still working, after which she signed off on his work and he left.  (*See* Pl.'s Stmt. at 3; Pl.'s Dep. Tr., Ex. A to Defendant Torre's Loc. R. 56(a)1 Stmt. [Doc. # 83-5] at 22–23.)

On July 3, 2009 at about 9:30 a.m., Defendant O'Connor, a Detective for the Guilford Police Department, received a call from Mr. Torre reporting that his off-duty Glock 26 9mm pistol had gone missing from his residence.  (*See* Arrest Warrant Appl., Ex. A1 to Defs.' 56(a)1 Stmt. at 1; *see also* Torre Aff., Ex. B to Torre's 56(a)1 Stmt. ¶ 7.) Mr. Torre told Defendant O'Connor over the phone that he had gone into his basement between 7:30 a.m. and 8:00 a.m. that morning to retrieve his pistol from the gun case where he stored it, and found that the pistol, the holster, and the spare magazine were missing.  (*See* Arrest Warrant Appl.; *see also* Torre Stmt., Ex. B to Defs.' 56(a)1 Stmt.; Torre Aff. ¶¶ 4–5.)  Mr. Torre also stated that he thought he may have left the pistol at work, but his gun was not in his locker when he went there to check.  (*See* Arrest Warrant Appl. at 1; *see also* Torre Stmt; Torre Aff. ¶ 6.)

Upon receiving the call, Defendant O'Connor visited Mr. Torre's home and interviewed him, his wife Sylvia, and his mother-in-law, Mrs. D'Orazio.  (*See* Arrest Warrant Appl. at 1; *see also* Torre Aff. ¶ 8.)  Mr. Torre told Defendant O'Connor that he had stored his personal off-duty pistol in the gun case in his basement on the evening of June 30, 2009, that he had worn his duty weapon to work on July 1, 2009, that he had stayed home on July 2, 2009, and that he discovered the pistol was missing on July 3,

---

[5] The parties disagree as to how long Plaintiff was in the basement by himself. Mrs. D'Orazio wrote in her statement to the Guilford Police Department that Plaintiff was alone for "a period of 20 min[utes] total" (D'Orazio Stmt.), while Plaintiff states he was alone for no more than a couple of minutes (Pl.'s Dep. Tr., Ex. A to Torre's Loc. R. 56(a)1 Stmt. [Doc. # 83-5] at 23).

2009.  (*See* Arrest Warrant Appl. at 1; *see also* Torre Aff. ¶¶ 9–12; Torre Stmt.)  Mr. Torre also stated that there was no sign of a break-in or forced entry, and that the house had always been locked during the time period in question.  (*See* Arrest Warrant Appl. at 1; *see also* Torre Aff. ¶ 13; Torre Stmt.)  Mrs. D'Orazio told Defendant O'Connor that only her housekeeper and a Comcast technician had been in the house between June 30 and July 3, 2009, and that her housekeeper did not go into the basement and was never alone in the house.  (*See* Arrest Warrant Appl. at 2; *see also* D'Orazio Stmt. at 2.)  Mrs. D'Orazio also stated that the Comcast technician was the only person other than the residents of the home who had been alone in the basement, and stated that he had worked in the area where the gun case was located.  (*See* Arrest Warrant Appl. at 2.)[6]  Defendant Torre stated that neither his wife nor his mother-in-law knew he stored the pistol in the basement.  (*See id.* at 3.)  There were no signs of burglary or forced entry at the home.  (*See id.*)

After interviewing Mr. Torre and his family, Defendant O'Connor took pictures of the area where the gun case was located, and processed the gun case for fingerprints and DNA, which were sent to the state crime laboratoy for analysis.  (*See id*; *see also* Request for Examination of Physical Evidence I, Ex. D to Defs.' 56(a)1 Stmt.)  Defendant O'Connor contacted Comcast Security and spoke with Plaintiff's supervisor, who identified Plaintiff as the technician who had completed the cable installation at Mr. Torre's home.  (*See* Arrest Warrant Application at 2.)  Defendant O'Connor checked Plaintiff's criminal record and determined that he was a convicted felon whose arrest

---

[6] The parties dispute how close Plaintiff actually was to the gun case when he installed the new cable line in the basement.  Mrs. D'Orazio claims that Plaintiff worked on the wire that ran across the shelf on which the gun case was located and that Plaintiff worked within one to two feet of the gun case.  (*See* Arrest Warrant Application at 2.)  Plaintiff claims that the wire near the gun case was actually an old wire, and that he was never closer than five to ten feet from the gun case when he was in the basement alone.  (*See* Pl.'s Dep. Tr. at 71–72.)

history included charges for theft, terroristic threatening, resisting arrest, and assaulting a police officer.  (*See id.*)  Defendant O'Connor also confirmed that Plaintiff did not have a gun license.  (*See id.* at 3.)

On July 8, 2009, after returning home from work as usual, Plaintiff answered a knock at his door and found Defendant O'Connor and his partner standing outside.  (*See* Pl.'s Stmt. at 5.)    Plaintiff let the detectives into his home and they discussed the investigation into the missing pistol.  (*See id.*; *see also* Arrest Warrant Appl. at 3.) Plaintiff confirmed that he had performed the installation at Mr. Torre's home, and that he had worked in the basement.  (*See* Pl.'s Stmt. at 5; Arrest Warrant Appl. at 3.) However, Plaintiff stated that he had not seen any gun box, and when Defendant O'Connor showed him a picture of the gun case, he said he had not touched or opened the case and his fingerprints should not be on it.  (*See* Pl.'s Stmt. at 5; Arrest Warrant Appl. at 3.)[7]  Plaintiff told the detectives that he had "a small daughter and [he] ha[d] no interest in obtaining a gun."  (*See* Pl.'s Stmt. at 5; *see also* Arrest Warrant Appl. at 3.) Plaintiff also admitted that he was a convicted felon and had served time in jail in

---

[7] Defendant O'Connor also showed Plaintiff a picture of the cable that ran across the shelf where the gun case was located.  (*See* Pl.'s Stmt. at 5; Arrest Warrant Appl. at 3.) Plaintiff claims he told Defendant O'Connor "repeatedly that [he] didn't remember working in that area and that [his] prints shouldn't be in that area."  (*See* Pl.'s Stmt. at 5.) However, Defendant O'Connor wrote in the application for the arrest warrant that Plaintiff said "his fingerprints should not be on that box though he had been working in the area."  (*See* Arrest Warrant Appl. at 3.)  Plaintiff claims that he did not work in the immediate vicinity of the gun case, but rather worked between five and ten feet away from the shelving unit on which it was stored.  (*See* Pl.'s Dep. Tr. at 71–72.)  However, when Plaintiff was asked about the paragraph of the arrest warrant application in which this statement was located, he confirmed that there was nothing false in that paragraph. (*See* Pl.'s Dep. Tr. at 68.)

Georgia, but did not know if his DNA was on file there.  (*See* Arrest Warrant Appl. at 3.)[8]

Plaintiff refused to provide a DNA sample or to sign a written statement describing the

interview, but did offer to submit to a lie detector test.  (*See id.*; Pl.'s Dep. Tr. at 69–70.)

On July 17, 2009, Defendant O'Connor prepared an application for a warrant to

arrest Plaintiff in relation to the alleged theft of Mr. Torre's pistol, and on July 22, 2009,

Connecticut Superior Court Judge Vitale signed the warrant.  (*See* Arrest Warrant Appl.

at 4.)  The next day around 8:30 a.m., Plaintiff was in his work truck on the way to his

first job of the day when Defendant O'Connor and his partner pulled up in a green sports

car.  (*See* Pl.'s Stmt. at 7.)  Defendant O'Connor asked Plaintiff to step out of his vehicle,

and placed Plaintiff under arrest.  (*See id.*)  Plaintiff was careful to comply with all of

Defendant O'Connor's requests and cooperated fully during his arrest.  (*See id.*)  After his

arrest and processing, Defendant Brooks interviewed Plaintiff.  (*See id.*)  In order to

convince Plaintiff to speak with her, she informed him that he had a very high bond of

$150,000 and indicated that she would advocate for a reduced bond in order to assist him

in being released.  (*See id.*)  Plaintiff maintained his innocence throughout the

interrogation despite Defendant Brooks's repeated attempts to get him to confess to the

alleged theft.  (*See id.* at 8–9.)

On July 23, 2009, Defendants O'Connor and Brooks submitted a search warrant

application to search Plaintiff's home and truck for the missing gun, which was signed

that same day by Judge Vitale.  (*See* Gun Search Warrant Appl., Ex. J to Defs.' 56(a)1

---

[8] Plaintiff claims that Defendant O'Connor was not aware of his criminal history prior to this interview, but admitted that Defendant O'Connor may have confirmed his criminal status after the interview. (*See* Pl.'s Stmt. at 5; Pl.'s Dep. Tr. at 55–56, 61–62.) The arrest warrant application does not indicate whether Defendant O'Connor checked Plaintiff's criminal record before or after interviewing Plaintiff.  (*See* Arrest Warrant Application at 2.)

Stmt.)  Defendant O'Connor was present for the search of Plaintiff's home and truck. (*See* O'Connor Aff., Ex. L to Defs.' 56(a)1 Stmt. ¶ 3; Jackson Aff., Attachment to Pl.'s Resp. to Defs.' 56(a)1 Stmt. [Doc. # 110] (describing the search of her home in July 2009).)  Defendants did not locate the gun during the search of either location, and the police did not seize any evidence pursuant to the search warrant.  (*See* Return of Warrant, Ex. K to Defs.' 56(a)1 Stmt. (noting "nothing seized"); O'Connor Aff. ¶¶ 4–5.)  When Plaintiff was released from jail nearly three weeks later, his home computer had malfunctioned, indicating that the hard drive was missing, and his GPS device had gone missing from his truck, which had been left in the Comcast parking lot.  (*See* Pl.'s Stmt. at 13; Pl.'s Resp. to Defs.' 56(a)1 Stmt. [Doc. # 110].)  Plaintiff claims that the police stole his hard-drive and GPS during the search of his home and his truck.

On July 24, 2009, Plaintiff was arraigned on the charges and his bond was set at $150,000.  (*See id.* at 10.)  Plaintiff was detained in the Whalley Jail, where he was denied visitation and telephone privileges, and had difficulty accessing legal and religious materials.  (*See id.* at 10–12.)  On July 28, 2009, Defendant O'Connor obtained a warrant to take a DNA sample from Plaintiff.  (*See* DNA Search Warrant Appl., Ex. A2 to Defs.' 56(a)1 Stmt.)  On July 30, 2009, a DNA swab was taken from Plaintiff while he was detained, and was submitted to the state crime laboratory that same day.  (*See* Request for Examination of Physical Evidence II, Ex. E to Defs.' 56(a)1 Stmt.; *see also* Pl.'s Stmt. at 11).  On August 4, 2009, Plaintiff was brought back to court, where his attorney moved to reduce his bond.  (*See* Aug. 4, 2009 Tr., Ex. to Dec. 30, 2010 Compl. [Doc. # 1] at 1–2.) While Plaintiff's bond was not reduced, the judge admonished the State to process the fingerprint evidence as soon as possible.  (*See id.* at 3.)

Plaintiff was in court again on August 6, 2009, when the State indicated that the state crime laboratory had inadvertently compared the print on the gun case to Defendant Torre's fingerprints rather than to Plaintiff's.  (*See* Aug. 6, 2009 Tr., Ex. to Dec. 30, 2010 Compl. at 1–2.)  The judge again admonished the State to process Plaintiff's fingerprint evidence as quickly as possible, indicating that the case would be very weak without fingerprint evidence, and that if the evidence was not processed quickly, he would feel compelled to lower Plaintiff's bond as he had doubts about the State's ability to prove its case beyond a reasonable doubt without this evidence.  (*See id.* at 3; *see also* Nov. 12, 2009 Tr., Ex. to Dec. 30, 2010 Compl. at 1.)  On August 13, 2013, when the fingerprint analysis determined that he had not touched the gun case, Plaintiff was released on bail pending the results of the DNA tests.  (*See* Pl.'s Stmt. at 12–13.)  After some delay in processing the DNA evidence, on November 19, 2009, the State represented that the results of the DNA test excluded Plaintiff, and nolled the charges.  (*See* Nov. 19, 2009 Tr., Ex. to Dec. 30, 2010 Compl. at 1.)  Plaintiff's attorney moved for a dismissal on the merits, which the court promptly granted.  (*See id.* at 1–2.)  The record is devoid of any other evidence that could tie Plaintiff to the alleged theft of the pistol.

## II.   Motion to Strike

After filing his opposition to the pending motion for summary judgment, Plaintiff filed a motion [Doc. # 113] he styled as a "Motion to Strike Defendants Elliot Spector Training Documents and Motion to Strike Elliot Spector and Associates as Counsel for the Defense; Motion to Determine Statute of Limitations of Potential Co-Defendants Elliot Spector and Nobel, Spector & O'Connor Attorneys at Law Law Firm."  The Court will construe this motion as an objection to Defendants' summary judgment exhibits, a motion to disqualify Attorney Spector, and a motion to amend the Complaint to add

Attorney Spector and his law firm as parties to this action.  The gravamen of Plaintiff's claim appears to be that because Attorney Spector, who represents Defendants in this action, taught some of the police training courses attended by Defendants O'Connor and Brooks, he should be disqualified from this action, the training records should be struck from the summary judgment record, and Plaintiff should be permitted to add Attorney Spector and his law firm as defendants in this suit.  Defendants oppose this motion, arguing that Plaintiff has not raised valid grounds for his objection to the training records, Plaintiff has failed to meet the strict standard necessary for disqualification of opposing counsel, and Plaintiff has not asserted any facts to support a claim against Attorney Spector or his law firm, and that in any event, such a claim is time-barred.

### A.     Strike Exhibits

Plaintiff moves to strike Defendant Brooks's and O'Connor's police training records (Exs. H, I1, and I2) from the summary judgment record, arguing that because Attorney Spector, opposing counsel in this case, taught some of the training courses attended by Defendants, this created a conflict of interest that has tainted their records. Courts in this district have previously addressed why a motion to strike exhibits from a summary judgment record is improper:

> Pursuant to Federal Rule of Civil Procedure 12(f), a court may strike any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter from a party's pleading.  Such motions are disfavored. Most importantly, Rule 12(f) allows a court to strike pleadings only. Declarations and affidavits are not pleadings.  It is inappropriate for a court to strike material contained in exhibits to motions. . . . [A] motion to strike is improper with respect to summary judgment.  The Federal Rules of Civil Procedure do not explicitly allow motions to strike in the context of summary judgment.  Specifically, Rule 56, which governs summary judgment, does not provide a motion to strike as a tool in the summary judgment process. Rather, Rule 56(c) provides a means to object to inadmissible evidence referenced by the opposing party as follows:  A

> party may object that the material cited by the party's opponent to support
> or dispute a fact cannot be presented in a form that would be admissible in
> evidence.   Federal Rule 56(c) thus contemplates that the parties will flag
> for the court material cited by opposing counsel which is not admissible,
> and hence not properly considered on summary judgment.

*Cummings v. Bradley*, No. 3:11cv751 (AVC), 2013 WL 1149985, at *1 (D. Conn. Mar. 19, 2013) (internal citations and quotation marks omitted).   Thus, Plaintiff's motion to strike may not be used to strike the training records from the summary judgment record. However, even if this Court were to construe his motion as an objection to the admissibility of the documents, Plaintiff has not raised any legal grounds for his objection.   There mere fact that opposing counsel may have personal knowledge regarding the training records of Defendants O'Connor and Brooks does not render those records inadmissible.   Furthermore, because the Court concludes that no underlying constitutional violation has been shown, it does not reach the merits of Plaintiff's *Monell* claim for failure to train, and thus, the Court has not relied on any of the training records in ruling on the motion for summary judgment.   Therefore, Plaintiff's motion to strike the exhibits is denied.

### B.       Disqualification of Defense Counsel

Plaintiff also moves to disqualify Attorney Spector, arguing that he has a conflict of interest in this matter because he provided some of the police training on which Defendants rely in their defense to Plaintiff's *Monell* claim.   "In deciding whether to disqualify an attorney, a district court must balance a client's right freely to choose his counsel against the need to maintain the highest standards of the profession."   *GSI Commerce Solutions, Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204, 209 (2d Cir. 2010) (internal citations and quotation marks omitted).   "In view of their potential for abuse as a tactical device, motions to disqualify opposing counsel are subject to particularly strict scrutiny."

*Scantek Med., Inc. v. Sabella*, 693 F. Supp. 2d 235, 238 (S.D.N.Y. 2008).  Some of the recognized circumstances that would justify disqualification are a violation of professional disciplinary codes, or an attorney's representation of one client in a matter adverse to another existing or previous client.  *GSI Commerce Solutions*, 618 F.3d at 209.  However, "disqualification is warranted only if an attorney's conduct tends to taint the underlying trial."  *Id.*  Plaintiff has not alleged any such conduct on the part of Attorney Spector that would warrant his disqualification from this case.  The fact that Attorney Spector provided some of the police training attended by Defendants Brooks and O'Connor does not create a conflict of interest with respect to his representation of those clients in this matter.  Furthermore, as noted earlier, consideration of the training program implemented by the Guilford Police Department is not necessary to the resolution of this case.  Therefore, Plaintiff's motion to disqualify Attorney Spector is denied.

### C.      Request to Add Additional Parties

Finally, Plaintiff moves for "determination of statute of limitations of potential co-defendants Elliot Spector and Nobel, Spector and O'Connor."  This appears to be a request by Plaintiff to add Attorney Spector and his law firm as co-defendants to this case.  Fed. R. Civ. P. 21 governs the addition of new parties to an action, and provides that parties may be added by court order "on such terms as are just."  Under Rule 21 "courts must consider judicial economy and their ability to manage each particular case, as well as how the amendment would affect the use of judicial resources, the impact the amendment would have on the judicial system, and the impact the amendment would have on each of the parties already named in the action."  *Sly Magazine, LLC v. Weider Publ'ns, LLC*, 241 F.R.D. 527, 532 (S.D.N.Y. 2007).  However, courts are guided by "the

same standard of liberality afforded to motions to amend pleadings under [Fed. R. Civ. P.] 15," when determining whether a plaintiff should be permitted to add parties to an action. *Soler v. G & U, Inc.*, 86 F.R.D. 524, 527–28 (S.D.N.Y. 1980). "The Second Circuit has held that a Rule 15(a) motion 'should be denied only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party.'" *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 603–04 (2d Cir. 2005) (quoting *Richardson Greenshields Secs., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987)).

Plaintiff does not articulate exactly what claims he wishes to assert against these parties, has not submitted a proposed amended complaint, and does not allege any additional facts in support of his new claims, except to point out that Attorney Spector taught police training courses attended by Defendants O'Connor and Brooks. To the extent that Plaintiff seeks to add Attorney Spector and his firm to his § 1983 claims, the statute of limitations on those claims expired in 2012, and therefore such amendment would be futile. *See Walker v. Jastremski*, 430 F.3d 560, 562 (2d Cir. 2005) (noting the three-year statute of limitations for § 1983 actions). Plaintiff also mentions a possible antitrust claim in his motion to strike, but it is unclear what facts could give rise to this claim, or why such a claim is so related to the underlying facts of this case that Plaintiff should be permitted to add it to this action, as opposed to pursuing a separate suit against Attorney Spector and his firm. Furthermore, to the extent that Plaintiff seeks to assert any claim against the proposed co-defendants, such amendment would prejudice the existing defendants in this suit. Discovery had already closed and multiple dispositive motions had been filed when Plaintiff filed his motion seeking to add the new defendants. Adding new parties at this point would be inequitable to the remaining defendants in this

action, and would be an inefficient use of judicial resources.  Therefore, Plaintiff's motion is denied.

### III.    Motion for Summary Judgment

Plaintiff has asserted claims against Defendants pursuant to § 1983 for false arrest and illegal search and seizure in violation of his Fourth Amendment rights, for selective enforcement and disparate treatment in violation of his Fourteenth Amendment rights, and for peonage, in violation of his Thirteenth Amendmenth rights, in addition to a civil rights conspiracy claim pursuant to § 1985, a *Monell* claim against the Guilford Police Department, and several of state-law claims.  Defendants argue that they are entitled to summary judgment on each of these claims.

### A.    False Arrest

Plaintiff brings a claim for false arrest against Defendants Brooks and O'Connor for his July 23, 2009 arrest pursuant to an arrest warrant.  False arrest claims under § 1983 are "substantially the same as claims for false arrest or malicious prosecution under state law."  *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (internal quotation marks omitted).  Under Connecticut law, "false imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another."  *Green v. Donroe*, 186 Conn. 265, 267 (1982).  To establish a claim for false arrest under 42 U.S.C. § 1983, a plaintiff is required to show that "the defendant intentionally confined him without his consent and without justification."  *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (internal quotation marks omitted).  A false arrest claim will fail if the defendant-officer had probable cause to arrest the plaintiff.  *See, e.g., Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (noting that probable cause is "a complete defense to an action for false arrest").  "While an arrest pursuant to a facially valid arrest warrant is presumed to be made with

probable cause, a plaintiff can demonstrate that his right not to be arrested without probable cause was violated where the officer submitting the probable cause affidavit acted with reckless disregard for the truth." *Martinetti v. Town of New Hartford*, 12 F. App'x 29, 32 (2d Cir. 2001) (internal citations and quotation marks omitted). Furthermore, "[a]n arrest warrant procured by fraud, perjury or the misrepresentation or falsification of evidence can overcome the presumption of probable cause." *Id.* at 33 (internal citations and quotation marks omitted).

Plaintiff argues that the arrest warrant application submitted by Defendant O'Connor contained knowing misrepresentations and false statements, and failed to include potentially exculpatory evidence, such that the presumption of probable cause no longer applies in this case.  Specifically, Plaintiff disputes that he was working in the direct area of the gun case in Mr. Torre's basement, and claims that Mr. Torre lied about the whereabouts of the firearm when he reported it missing.  However, at his deposition, Plaintiff admitted that he had no evidence that Defendant O'Connor knew anything in the arrest warrant application was false:

> Q:     The only single question that I have is, at the time that Detective O'Connor drafted the arrest warrant, do you have any evidence that indicates that he knew that anything in [it] was false?
>
> A:     No; that's just an assumption.  He's saying like he just realized like he didn't have it, and he was saying—I remember, like I said, it ain't a crime to assume, but—No; I don't think he—Just going off of this, this is my first time seeing the police report, so I'm kind of processing, but from what I'm reading, it looks like he's not like—Hold on.  Ask the question one more time.
>
> Q:     Okay.  The question is not whether or not anything in there is true or false; the only question that I have is, at the time Detective O'Connor drafted the arrest warrant application, is there any evidence that you have that shows that he knew that this statement was false?
>
> A:     I don't have no evidence.

15

(Pl.'s Dep. Tr. at 150–51.)    "A police officer may rely upon the statements of victims and witnesses to determine the existence of probable cause for the arrest, regardless of the ultimate accurateness or truthfulness of the statements." *Ritz v. Breen*, No. 3:99CV2267 (CFD), 2002 WL 519095, at *5 (D. Conn. Mar. 11, 2002).  As Plaintiff himself admitted, there is no evidence in the record that Defendants knew or should have known that Mr. Torre's and Mrs. D'Orazio's statements were false or misleading such that a jury could reasonably conclude that Defendant O'Connor acted in reckless disregard of the truth when he relied on these statements in the arrest warrant application.

Furthermore, Plaintiff has not put forth any evidence to indicate that Defendant O'Connor himself misrepresented the facts in the arrest warrant application or ignored potentially exculpatory evidence.  The arrest warrant application indicates that Plaintiff denied that he had seen the gun case or taken the gun and that he offered to take a lie detector test to prove his innocence.  (*See* Arrest Warrant Appl. at 3.)   The application also indicates that Mr. Torre initially believed he may have left his gun at work and checked there before reporting it stolen.  (*See id.* at 1.)  Plaintiff also appears to argue that Defendants failed to follow up on other potentially exculpatory evidence.  For example, Plaintiff claims that Defendants should have waited until his DNA and fingerprints could be compared to the samples taken from the gun case before applying for an arrest warrant.  However, "[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997).  Thus, Defendants' failure to pursue every possible lead before submitting the arrest warrant does not constitute fraud or misrepresentation and does not indicate that they lacked probable cause for the arrest.  Plaintiff has failed to put forth

any evidence from which a jury could conclude that his arrest warrant was procured by fraud or perjury such that the presumption of probable cause is overcome in this case. Even if Plaintiff did not commit the crimes for which he was arrested, that does not mean that Defendants lacked probable cause at the time he was arrested. *See Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) ("[P]robable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information.")   Therefore, Defendants' motion for summary judgment is granted on Plaintiff's claim for false arrest.

## B.     Illegal Search and Seizure

Plaintiff asserts a claim against Defendants for illegal search and seizure. Defendants obtained two search warrants in the course of their investigation of this case. First, on July 23, 2009, Defendants O'Connor and Brooks submitted a search warrant application to search Plaintiff's home and truck for the missing gun, which was signed that same day by Judge Vitale.  (*See* Gun Search Warrant Appl., Ex. J to Defs.' 56(a)1 Stmt.)  Second, on July 28, 2009, Defendant O'Connor obtained a warrant to take a DNA sample from Plaintiff.  (*See* DNA Search Warrant Appl., Ex. A2 to Defs.' 56(a)1 Stmt.) Searches were conducted pursuant to both of these warrants and Defendants seized a DNA sample from Plaintiff.  Plaintiff appears to challenge the probable cause in support of both of the warrants.

"In deciding whether probable cause exists for a search warrant, a judge must determine whether 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Salameh,* 152 F.3d 88, 113 (2d Cir. 1998) (quoting *Illinois v. Gates,* 462 U.S. 213, 238 (1983)).  A reviewing court must "accord 'great deference' to a judge's determination that probable cause exists, and [ ] resolve any

doubt about the existence of probable cause in favor of upholding the warrant." *Id.*

Plaintiff has not put forth any evidence based on which a jury could conclude that

Defendants lacked probable cause to search his home and truck and to obtain a DNA

sample.  Based on the statements of Mr. Torre and Mrs. D'Orazio, Defendants Brooks

and O'Connor were able to determine that Plaintiff was the only individual other than the

residents of the home who had unsupervised access to the location where the firearm was

stored during the short time period in which it went missing.  Furthermore, based on a

search of Plaintiff's criminal records, they determined that he had a prior history of theft.

Thus, Defendants had probable cause to believe that Plaintiff had stolen the gun and

currently possessed the gun, such that they could obtain a warrant for Plaintiff's DNA

and a warrant to search his home and truck for the missing firearm.  To the extent that

Plaintiff argues that the witness statements on which Defendants relied were false, or that

Defendants failed to fully investigate the reported crime, which would undermine the

probable cause on which the warrants were based, the Court has already addressed and

rejected that argument.

Plaintiff also argues that Defendants seized his hard drive and GPS in the course

of their search of his home and truck.  The search warrant for these locations did not

include these devices in its description of the items to be seized.  The description of the

items to be seized under a warrant must be "sufficiently specific to permit the rational

exercise of judgment [by the executing officers] in selecting what items to seize." *United*

*States v. LaChance,* 788 F.2d 856, 874 (2d Cir. 1986) (quoting *United States v. Vargas,* 621

F.2d 54, 56 (2d Cir. 1980)) (alterations in original).  "If the scope of the search exceeds

that permitted by the terms of a validly issued warrant . . . the subsequent seizure is

unconstitutional." *Horton v. California,* 496 U.S. 128, 140 (1990).  Thus, these alleged seizures were not conducted pursuant to the validly issued search warrant in this case.

However, Plaintiff has not put forth sufficient evidence based on which a reasonable jury could infer that Defendants did in fact seize these devices.  Defendant O'Connor avers that the police did not seize Plaintiff's hard drive or GPS device during the course of their search (O'Connor Aff. ¶¶ 4–5), and the return of the search warrant indicates that no items were seized (Return of Warrant).  In his affidavit, Plaintiff states only that these items were missing when he returned home, after spending twenty-one days in jail.  Plaintiff indicates that his truck had been left in the Comcast parking lot during this time and that he could not locate his GPS device in his truck the day after his release.  He also states that his computer malfunctioned when he returned home, and displayed an error message regarding the hard drive.  He does not allege that he personally observed that the hard drive had been physically removed from the computer. (*See* Pl.'s Stmt. at 13; Pl.'s Resp. to Defs.' 56(a)1 Stmt. [Doc. # 110].)  These statements do not support the inference that Defendants Brooks and O'Connor seized the devices. There is nothing in the record to indicate that Defendant Brooks was even present during the search.  Furthermore, nearly a month elapsed between the search of Plaintiff's home and truck and his discovery that the items were missing, during which time an untold number of people had access to those locations.  In the absence of evidence supporting a reasonable conclusion that Defendants seized the devices or were involved in their disappearance, Plaintiff cannot point to an outstanding question of material fact that would preclude summary judgment on this claim.  Therefore, Defendants' motion for summary judgment is granted with respect to Plaintiff's search and seizure claims.

C.        **Selective Enforcement and Disparate Treatment**

Plaintiff also brings a claim against Defendants for selective enforcement and disparate treatment in violation of his rights under the Equal Protection clause of the Fourteenth Amendment.  To prevail on an equal protection claim, the Second Circuit requires that a plaintiff show both (1) that he or she was treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. *Harlen Ass. v. Inc. Village of Mineola,* 273 F.3d 494, 499 (2d Cir. 2001) (internal citations and quotation marks omitted).  Defendants argue that Plaintiff has failed to point to any similarly situated individuals who were not arrested under similar circumstances, and therefore his equal protection claim fails.  While the Second Circuit has noted that "a plaintiff alleging a claim of selective prosecution in violation of the Equal Protection Clause must plead and establish the existence of similarly situated individuals who were not prosecuted," "[a] plaintiff alleging an equal protection claim under a theory of discriminatory application of the law or under a theory of discriminatory motivation underlying a facially neutral policy or statute, generally need not plead or show the disparate treatment of other similarly situated individuals." *Pyke v. Cuomo*, 258 F.3d 107, 108–09 (2d Cir. 2001).

Even if Plaintiff need not establish that similarly situated individuals were not arrested under similar circumstances to sustain his equal protection claim, he has failed to offer any evidence based on which a jury could reasonably conclude that Defendants acted based on racial animus or other bad faith intent when they investigated and arrested Plaintiff.  The gravamen of Plaintiff's claim appears to be that his arrest was racially

motivated.  However, there is no evidence in the record that either Defendant Brooks or Defendant O'Connor exhibited any racial animus toward Plaintiff.  As discussed above, Defendants, relying in good faith on witness statements and the results of their investigation, had probable cause to suspect that Plaintiff had stolen Mr. Torre's missing firearm.  There is nothing in the record to suggest that anything other than this probable cause was the motivating factor for Plaintiff's arrest.  Therefore, Defendants' motion for summary judgment is granted with respect to Plaintiff's equal protection claim.

> **D.    Peonage**

Defendants move for summary judgment on Plaintiff's peonage claim, arguing that there is no evidence in the record based on which a jury could conclude that they forced Plaintiff into compulsory service.  In his memorandum in opposition, Plaintiff has indicated that he plans to abandon his peonage claim.  (*See* Pl.'s Opp'n [Doc. # 106] at 6–7.)  Therefore, Defendant's motion for summary judgment is moot with respect to this claim.

> **E.    Civil Rights Conspiracy**

Plaintiff also brings a claim for civil rights conspiracy in violation of 42 U.S.C. § 1985 against Defendants.  "Section 1985(3) provides a civil cause of action only when some other defined federal right has been violated; it creates no substantive rights." *Knight v. City of New York*, 303 F. Supp. 2d 485, 501 (S.D.N.Y. 2004) *aff'd*, 147 F. App'x 221 (2d Cir. 2005).  Therefore, because the Court has granted summary judgment on each of Plaintiff's underlying constitutional claims, summary judgment must also be granted on Plaintiff's civil rights conspiracy claim under § 1985.  *See J.E. ex rel. Edwards v. Ctr. Moriches Union Free Sch. Dist.*, 898 F. Supp. 2d 516, 555 (E.D.N.Y. 2012) ("Given the undersigned has concluded that plaintiffs have failed to prove any claim establishing a

violation of a federal or constitutional right, there is no basis on which plaintiffs can seek recovery under § 1985(3).").

### F.   *Monell*

Plaintiff also alleges a *Monell* claim for municipal liability against the Guilford Police Department.   Because the Court has granted summary judgment on each of Plaintiff's constitutional claims, summary judgment must also be granted on Plaintiff's *Monell* claim.   "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned led to an independent constitutional violation."  *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006).   Thus, Defendants' motion for summary judgment is granted as to Plaintiff's *Monell* claim.

### G.   State Law Claims

Having granted summary judgment on all of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims for false imprisonment, malicious prosecution, assault and battery, defamation, evidence tampering, entrapment, intentional infliction of emotional distress, negligent infliction of emotional distress, coercion, harassment, and threatening.  *See* 28 U.S.C. § 1367(c)(3); *Carnegie Mellon Univ. Cohill*, 484 U.S. 343, 350 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.").

**IV.     Conclusion**

For the foregoing reasons, Plaintiff's Motion [Doc. # 113] to Strike is DENIED and Defendants' Motion [Doc. # 100] for Summary Judgment is GRANTED on Plaintiff's § 1983 claims, and supplemental jurisdiction over his state-law claims is declined.  The Clerk is directed to enter judgment for Defendants and to close this case.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 17th day of March, 2013.

23